J-S72040-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DERRICK JACKSON | : | |
| | : | No. 1607 EDA 2016 |
| Appellant | | |

Appeal from the Judgment of Sentence April 29, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s):  CP-46-CR-0000700-2015

BEFORE:   BENDER, P.J.E., MUSMANNO, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JANUARY 10, 2018**

Appellant Derrick Jackson appeals from the judgment of sentence entered by the Court of Common Pleas of Montgomery County after a jury convicted Appellant of first-degree murder, two counts of armed robbery, and related offenses.  Appellant argues that the lower court erred in denying his suppression motion, claims the jury's decision to convict him of murder was against the weight of the evidence, and contends that his sentence is illegal.

On December 1, 2014, at approximately 1:00 a.m., Appellant robbed Charles Crawford at gunpoint using a shotgun as Crawford was walking home from work.  Crawford complied with Appellant's demands and gave him his wallet, cell phone, and cigarettes.

Shortly thereafter, in the hours that followed, Appellant shot and killed Lori Sheridan ("the victim") with a shotgun inside her home located at 503

_____

*   Former Justice specially assigned to the Superior Court.

King Street in Pottstown, Pennsylvania. Several witnesses revealed to police that Appellant killed the victim because she owed him twenty dollars for drugs.

On the same morning, after the murder, between 5 and 5:30 a.m. Appellant robbed Ishmael Vaudrin at gunpoint with his shotgun at an intersection in West Pottsgrove Township. Mr. Vaudrin complied with Appellant's demands and gave Appellant his cellphone and his headphones that had an Army logo on them.

Evidence of Appellant's involvement in these crimes was discovered during Appellant's scheduled appointment with his probation officer on December 2, 2014. Adult Probation Officer (APO) Michael Poust indicated that Appellant had previously scheduled the home visit by telephone and had agreed to meet with probation officers at his home at 1:00 p.m. that day. When APO Poust and APO Jennifer Hall arrived at Appellant's home, Appellant's father told them that Appellant would return shortly.

At 1:15 p.m., the probation officers observed Appellant walking down the street and noticed that he had a clear Ziploc bag sticking out of the left back pocket of his jeans. Suspecting that the bag contained a controlled substance, APO Poust asked Appellant what was in the bag. Appellant first acted as if there was no bag in his pocket. Thereafter, he told the officers "not to jam him up" and entered the home, shutting the door in the officers' faces. N.T. Suppression Hr'g, 9/30/2015, at 22. At that point, the officers called for backup from uniformed police.

In the moments that followed, Appellant sent APO Foust a text message, apologizing for his behavior, stating: "I'm sorry, man. I just been on edge lately. I swear to you I haven't done nothing wrong and just – in just a little spooked 'cause something happened with my cousin last night. I've been looking for a job and been watching my kids, man [sic]." N.T. Suppression Hr'g, 9/30/2015, at 24-25, 88. Thereafter, the officers again knocked on the door and Appellant and his father answered the door. The officers asked to "look around" the home and asserted that both Appellant and his father gave them permission to do so. *Id*. at 63. Officer Timothy Roeder, who responded to the probation officers' call for backup, confirmed that Appellant and his father gave an "inviting response" to the probation officers' request to enter the home. *Id*. at 122.

After the officers entered the home, Appellant informed them that he had been in his bedroom and in the backyard since arriving home. Appellant explained to APO Hall that the plastic bag he had brought home in his pocket contained shotgun shells and informed her that he put the bag behind the backyard shed. While leading APO Hall to the shed, Appellant changed his mind and told her the shells were inside the home. Nevertheless, the officers found the shotgun, shells, and several bags of heroin behind the shed.

Based on the officers' discovery of the heroin in Appellant's possession, which was a violation of his probation, Appellant was placed under arrest. Thereafter, Appellant gave four separate statements to the police about the aforementioned crimes. The officers provided Appellant with ***Miranda***

warnings before his first statement and repeated the warnings before the fourth statement. During this final statement, Appellant admitted to killing the victim, but claimed it was accidental.

Based on this confession and the shotgun found at Appellant's home, Appellant was charged with the victim's murder as well as the two armed robberies that were committed in the Pottstown area on the same evening. On April 13, 2015, Appellant filed a counseled omnibus pretrial motion in which he argued, *inter alia*, that his statements to police were illegally obtained as 1) he had not been advised of his **Miranda** rights, 2) had not given knowing, voluntary, or intelligent waiver of these rights, and 3) only confessed due to the officers' unnecessary delay, which violated his due process rights.

On May 5, 2015, Appellant filed a *pro se* suppression motion in which he challenged the validity of the search of his home and his subsequent arrest and argued that his statements to police should be suppressed as the police "threatened, assaulted, and coerced" him during their interrogation. *Pro se* filing, 5/5/15, at 2. Thereafter, on June 1, 2015, defense counsel filed a motion to suppress, vaguely asking the trial court to suppress "(1) all statements given by [Appellant] to the police … on December 3, 2014, and (2) [a]ny evidence recovered during the search of Appellant's residence." Motion to suppress, 6/1/17, at 1.

Based on the number Appellant's suppression claims and the anticipated volume of testimony, the lower court held two suppression hearings to address Appellant's respective claims related to the suppression of the physical

- 4 -

evidence obtained during the search of his residence and his subsequent statements to police. On October 8, 2015, the trial court denied Appellant's motion to suppress with respect to physical evidence, and on October 27, 2015, the trial court denied the motion to suppress with respect to Appellant's statements to police.

Appellant proceeded to a jury trial which was held from November 30, 2015 to December 4, 2015. Therafter, the jury convicted Appellant of first degree murder, robbery (two counts), criminal conspiracy to commit robbery, and possession of a firearm with an altered manufacturer's number. On April 29, 2016, the trial court sentenced Appellant to life imprisonment without parole for his murder conviction. Appellant filed a timely post-sentence motion, which the trial court denied. After filing a timely notice of appeal, Appellant complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

In his concise statement, Appellant raised the following issues for review on appeal:

1. The pre-trial suppression motion was erroneously denied.

2. The guilty verdict rendered by the jury on was against the weight of the evidence in that the jury failed to give proper weight to the evidence that Appellant had ingested marijuana and PCP in quantities sufficient enough to negate the specific intent to kill required for a conviction of first degree murder.

3. The sentence handed down was unreasonable in light of the circumstances and [Appellant's] personal characteristics and personal history where he received a sentence of life without parole. The sentence of life without parole does not allow for

individual circumstances at sentencing for youthful offenders in violation of the United States and Pennsylvania constitutions. The sentence fails to take into account [Appellant's] rehabilitative potential and needs.

Concise Statement, at 1 (reordered for review).

First, Appellant asserted in his concise statement pursuant to Rule 1925(b) that his "pre-trial suppression motion was erroneously denied." Concise Statement, at 1. The Commonwealth asserts that Appellant's suppression argument should be deemed waived as Appellant failed to sufficiently articulate in his concise statement the specific errors made by the trial court in issuing two separate orders to deny Appellant's suppression motions that raised multiple sub-claims.

Rule 1925 requires an appellant to comply with a trial court's order to file a statement of errors complained of on appeal; any issues not raised in such statement will be deemed waived. *Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998). Rule 1925 expressly provides that "[t]he Statement shall concisely identify *each ruling or error* that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii) (emphasis added). This Court has emphasized that "[w]hen the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Smith*, 955 A.2d 391, 393 (Pa.Super. 2008) (*en banc*) (citation omitted). *See Commonwealth v. Williams*, 959 A.2d 1252 (Pa.Super. 2008) (finding the appellant waived his challenge to the trial court's denial of his request to

suppress evidence obtained in the search of his residence due to the vagueness of the appellant's concise statement).

Appellant's boilerplate assertion that the trial court erred in denying his suppression motion failed to preserve this challenge for review on appeal. Nevertheless, despite the trial court's need to speculate on which of the particular suppression rulings Appellant wished to challenge on appeal, it prepared a thorough opinion pursuant to Pa.R.A.P. 1925(a), addressing each and every possible claim that Appellant pursued in his multiple suppression motions. Even assuming that Appellant had properly preserved his challenge to the denial of his suppression motions with all their subissues, he would be entitled to no relief.

When reviewing a trial court's denial of a suppression motion, our standard of review is as follows:

> our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [**Commonwealth v.**] **Woodard**, [634 Pa. 162,] 129 A.3d [480,] 498 [(2015)]. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. **Commonwealth v. Galvin**, 603 Pa. 625, 985 A.2d 783, 795 (2009). Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. [**Commonwealth v.**] **Poplawski**, [634 Pa. 517,] 130 A.3d [697,] 711 [(2015)]. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial. **In the Interest of L.J.**, 622 Pa. 126, 79 A.3d 1073, 1085 (2013).

***Commonwealth v. Yandamuri***, ___Pa.___, 159 A.3d 503, 516 (2017).

Based on our independent review of the record and relevant case law and statutes, we agree with the trial court that Appellant's challenge to the denial of his suppression motions is meritless. ***See*** Trial Court Opinion, 8/18/2016, at 10-38. As the trial court has thoroughly addressed the merits of Appellant's arguments, we adopt the trial court's analysis as our own on this issue and affirm on the basis of the trial court's opinion.

Second, Appellant claims the jury's verdict convicting him of first-degree murder is against the weight of the evidence. When reviewing the trial court's denial of a challenge to the weight of the evidence, we are guided by the following standard:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Akhmedov***, ___A.3d___, 2017 PA Super 384 (Dec. 8, 2017) (quoting ***Commonwealth v. Houser***, 610 Pa. 264, 18 A.3d 1128, 1135–36 (2011) (citations and internal quotation marks omitted)).

Appellant argues that the jury's verdict was against the weight of the evidence given his defense of diminished capacity due to voluntary intoxication. Specifically, Appellant claimed he lacked the specific intent to kill the victim as he was under the influence of marijuana and PCP at the time of the murder. Our Supreme Court has clarified that a defense of diminished capacity due to voluntary intoxication is an "extremely limited defense available only to those defendants who admit criminal liability but contest the degree of culpability based upon an inability to formulate the specific intent to kill." **Commonwealth v. Hutchinson**, 611 Pa. 280, 25 A.3d 277, 312 (2011). Further,

> [a] diminished capacity defense does not exculpate the defendant from criminal liability entirely, but instead negates the element of specific intent. For a defendant who proves a diminished capacity defense, first-degree murder is mitigated to third-degree murder. *To establish a diminished capacity defense, a defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that he was unable to formulate the specific intent to kill. The mere fact of intoxication does not give rise to a diminished capacity defense.* Evidence that the defendant lacked the ability to control his or her actions or acted impulsively is irrelevant to specific intent to kill, and thus is not admissible to support a diminished capacity defense.

**Hutchinson**, 611 Pa. 280, 25 A.3d at 312 (citations and quotation marks omitted). **See also Commonwealth v. Blakeney**, 596 Pa. 510, 946 A.2d 645, 653 (2008) (requiring that a defendant show that he was "overwhelmed to the point of losing his faculties and sensibilities" to prove a voluntary intoxication defense).

Specifically, Appellant presented two eyewitnesses, Jourdan Harper and Andre Jackson, who testified that Appellant consumed marijuana and PCP before the murder. Harper claimed that Appellant was "high" at the time of the shooting; Jackson was not sure of the quantity of drugs that Appellant had consumed that night. N.T. Trial, 12/1/15, at 166; 12/3/15, at 68. In addition, Appellant offered the expert testimony of Dr. Gary L. Lage, Ph.D., who opined that if Appellant had imbibed the quantity of drugs as reported by the defense, "the effects of the drugs individually and in combination would have affected [Appellant's] ability to understand what was going on, understand the consequences of any actions that were going on, and even impaired his cognitive ability to make appropriate, you know, mental decisions." N.T. Trial, 12/3/15, at 118.[1]

However, in spite of this testimony that Appellant consumed drugs on the night of the murder, the Commonwealth presented ample evidence to show Appellant was not so intoxicated that he was unable to form the specific intent to kill. The prosecution's rebuttal expert, Dr. Robert Middleburg, Ph.D., testified that there was no way with any reasonable degree of scientific certainty to state that Appellant was under the influence of PCP when he murdered the victim. However, Dr. Middleburg indicated that Appellant's statement to police after the shooting was not "consistent with someone who's stoned … on PCP" as Appellant did not claim that drugs played any role in his

---

[1] We note that the record contains three separate volumes of trial transcripts for December 3, 2015 that contain the testimony of different witnesses.

actions, was able to fully recount his conversation with the victim before the shooting, and was in command of his actions. N.T. 12/4/15, at 40. In addition, the expert pointed to a drug test that Appellant took a day and a half after the shooting, which did not detect any PCP in Appellant's system. Both experts agreed that PCP remains in the body for a long time and would have been detected in his body if he had been smoking it on the night of the murder.

In addition, both parties presented evidence at trial that suggested that Appellant was not so intoxicated that he lost his "faculties and sensibilities" before murdering the victim. While Jourdan Harper claimed that Appellant had smoked PCP before the murder, he admitted that Appellant did not seem confused when he went to his car, retrieved his shotgun, loaded a shell, threatened the victim, and pulled the trigger. N.T. 12/1/15, at 192. Multiple witnesses testified as to Appellant's motive for killing the victim as she owed him twenty dollars for crack cocaine.

Moreover, while Appellant was awaiting trial, he wrote letters from prison to several people in which he asked them to lie about what actually happened the night of the murder. Appellant bragged about committing the murder, stating "[c]aught my first body. I don't wanna stop." N.T. Trial, 12/4/15, at 85. He expressed pride that the murder would help him in his enterprise of selling drugs and discussed plans to commit future violence upon his release from prison in an attempt to "take over Pottstown." *Id*.

Based on our review of the record, we agree with the trial court's determination that there was ample evidence to support the jury's verdict.

The jury weighed the evidence, determined that Appellant had formed the specific intent to kill the victim, and was not persuaded to accept Appellant's claim that his cognitive abilities of deliberation and premeditation were so compromised as required for a diminished capacity defense. While Appellant requests this Court accept his version of the evidence in question, the jury, sitting as factfinder, was free to believe all, part, or none of the evidence against Appellant. **Akhmedov**, **supra**. We decline Appellant's invitation to assume the role of fact-finder and to reweigh the evidence. We discern no abuse of discretion in the trial court's determination that the verdict did not shock one's sense of justice. Accordingly, Appellant's first claim fails.

Lastly, Appellant claimed in his concise statement that his sentence of life imprisonment without parole was unreasonable and unconstitutional as it did not allow for the consideration of his individual circumstances as a youthful offender.[2] As Appellant neither developed this argument nor raised this issue in his appellate brief, we need not discuss this issue further.

For the foregoing reasons, we affirm Appellant's judgment of sentence. As we adopt the trial court's analysis of Appellant's suppression claim, the parties must attach a copy of the trial court's opinion to all future filings.

Judgment of sentence affirmed. Jurisdiction relinquished.

_____

[2] We note that the record shows that Appellant was twenty years old when he committed the instant murder and robberies.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/10/18